2013 Ark.App. 307

**Shauna Chantel Yates McNUTT, Appellant**

v.

**Matthew Dalton YATES, Appellee.**

**No. CA 12–667.**

Court of Appeals of Arkansas.

May 8, 2013.

Rehearing Denied June 26, 2013.

Alexander Law Firm, Jacksonville, by: Hubert W. Alexander, for appellant.

The Law Offices of Katherine E. Blackmon, by: Katherine E. Blackmon, for appellee.

ROBIN F. WYNNE, Judge.

Shauna Chantel Yates McNutt appeals from an order of the Lonoke County Circuit Court granting Matthew Yates's motions for modification of custody of the parties' minor children and modification of child support. Shauna argues on appeal that the circuit court abused its discretion when it denied her motion for a continuance, that the circuit court erred in finding that Matthew proved a material change in circumstances and awarding him custody of the children, and that the circuit court erred by modifying the award of child

support retroactive to April 2011. The circuit court's order is affirmed in part and reversed and remanded in part.

The parties were married in 1999 and were granted a divorce in September 2011. Two children were born of the marriage, M.Y. and N.Y. Pursuant to the terms of the divorce decree, the parties had joint legal custody of the children, with Shauna having primary physical custody. In the interim between the circuit court's announcement of its decision and the entry of the final decree, Matthew filed a motion for modification of child support in July 2011, in which he alleged that he had lost his job after the final hearing for divorce, resulting in a decrease of his income.

On March 2, 2012, Matthew filed a motion for modification of custody. In the motion, he alleged that Shauna actively attempted to disrupt his relationship with the children, that the children spend more time with Shauna's parents than with Shauna, that he did not agree with Shauna's choice of school for the children, that Shauna refused to allow the children to engage in extracurricular activities, and that the children had expressed a desire to live with him. On March 16, 2012, Shauna's attorney filed a motion to withdraw as counsel. The motion was granted by the trial court that same day. Shauna filed a motion for a continuance on April 11, 2012. The motion was denied by the trial court. As a result, Shauna represented herself at the hearing on Matthew's motion.

At the hearing, held on April 12, 2012, Shauna testified that she reported to the Arkansas Department of Human Services that Matthew and his new wife, Cammy, fondle each other in front of the children and walk around in inappropriate clothing in front of the children. She also testified that the two perform sexual acts in front of the children and that Matthew forces N.Y. to take medicine when he is not sick. The

children attend a school affiliated with the Pentecostal Church. Shauna testified that she consulted with Matthew prior to placing the children in the school. She told parents at the school that Matthew is addicted to pornography. She also told people at the school that Matthew and Cammy are bisexual and engage in group sex. She previously accused Matthew of killing the children's dog and burglarizing her home without any evidence. Shauna testified to an incident in which M.Y. received emergency treatment for a burn while at summer camp about which she did not inform Matthew. Shauna also testified that she tries to promote the relationship between Matthew and the children.

Samantha Bishop, M.Y.'s teacher, testified that she had not seen Matthew behave in a manner she thought was inappropriate. She was aware of the rumors that Matthew was involved in pornography and group sex, as well as Shauna's contention that he was not involved with the children prior to the divorce. Anita Corbitt, the principal at the children's school, also testified that she had not seen any behavior by Matthew that she thought was inappropriate. According to Ms. Corbitt, the school received accreditation from the National Association of Public Schools in 2011. The school is not yet certified by the state. Some of the teachers do not have degrees that would be required by the Arkansas State Board of Education.

Officer Johnny Hicks with the Jacksonville Police Department testified regarding an incident on June 30, 2011, during which Shauna's father publicly cursed and threatened Matthew, who apparently did not respond. Officer Hicks testified regarding another incident on December 19, 2011, in which Matthew reported that Shauna broke into his house to remove certain property. Officer Hicks testified that the front door had been kicked in.

Lauren Hoffman, Cammy Yates's sister, testified that Cammy treats Matthew's children as though they were her own. She had never seen the children act nervous or uncomfortable while around Matthew and Cammy. Ms. Hoffman testified that Matthew's home is clean and that she had never heard him talk badly about Shauna in front of the children. She stated that she went with Matthew, Cammy, the children, and several other people on a trip to Alabama prior to Matthew and Cammy's marriage. She stated that, to her knowledge, they did not share a room on the trip and that she did not see anything inappropriate. Ms. Hoffman denied ever seeing the children act unwilling to go with Matthew for visitation. She further denied seeing Matthew do anything of a sexual nature in front of the children.

Cammy Yates testified and denied ever walking in front of the children in her underwear. She also denied ever performing sexual acts with Matthew in front of the kids. She further denied seeing any evidence that Matthew is addicted to pornography. Cammy denied allowing M.Y. to wear inappropriate clothes, but stated that M.Y. is constantly afraid she will get in trouble for wearing the clothing she is allowed to wear while with her and Matthew. According to Cammy, the children act upset about returning to Shauna after visitations. Cammy testified to an ongoing episode in which M.Y. tried for a week to see her naked or changing clothes. M.Y. has apparently asked Cammy about her sex life with Matthew, although Cammy insisted that it is a topic never discussed by them in front of the children. M.Y. also asked questions about sexually transmitted infections, including whether Cammy and her two-year-old child have STIs. Shauna had inquired as to whether Cammy had an STI during a deposition. Cammy testified that, after M.Y. was burned at summer camp, Shauna led Matthew to believe that she was still at the camp after Shauna took her home. Cammy stated that Shauna is not cooperative with Matthew. She also testified that Shauna's restrictions regarding what the children can wear were a recent, drastic change. According to Cammy, Shauna also accused her of molesting N.Y., the parties' son.

Matthew testified that Shauna alone made the decision about where to send the children to school prior to the divorce and that there has been no communication with her regarding the children's activities at school since the divorce. Matthew also testified that after M.Y. was injured at camp, Shauna led him to believe that she was still at the camp. According to Matthew, N.Y. had also been to the emergency room on a couple of occasions, and he was not notified. There was testimony that Shauna called Matthew and his family liars in front of the children during the hearing. Matthew also stated that the parties decided during the marriage that they were not going to raise the children in a "rigid" Pentecostal church. Matthew testified that Shauna will not allow M.Y. to take dance lessons, which he contended led to a change in the child's demeanor. M.Y. took dance and gymnastics lessons prior to the divorce. Matthew testified that the children are "on guard" around Shauna and act completely different when she is not around.

The testimony of Elaine Yates, Matthew's mother, was submitted via a video deposition. She testified that the family made a conscious decision not to raise the children in the Pentecostal Church and that the rules imposed by Shauna were not imposed during the marriage. She also testified that, since the divorce, it takes a while for the children to return to what she termed "normal" during visits with Matthew. Ms. Yates had caught M.Y. spying on her, Matthew, and Cammy. Ms.

Yates had never seen Matthew or Cammy act inappropriately around the children.

On May 9, 2012, the circuit court entered an order in which it found that a material change in circumstances existed because Shauna had the children attending a non-accredited school and a church the parties had agreed during their marriage not to attend, Shauna prohibited the children from engaging in extracurricular activities they had been involved with prior to the divorce, and the children's overall demeanor had changed negatively since the divorce. As a result, the circuit court awarded Matthew custody of the children. The trial court also ordered Shauna to pay child support and reduced Matthew's child support obligation retroactive to April 2011. This appeal followed.

■ Shauna's first argument on appeal is that the trial court erred by denying her motion for a continuance. The denial of a motion for continuance is reviewed under an abuse-of-discretion standard. *Ligon v. Walker*, 2009 Ark. 136, 297 S.W.3d 1. We find no abuse of discretion by the circuit court. Shauna's attorney was relieved several weeks prior to the hearing; however, she did not file her motion for a continuance until the day before the hearing. We affirm on this point.

■ Shauna's second point on appeal is that the trial court erred by finding that Matthew had proved a material change in circumstances. We review equity cases de novo, but will only reverse if the trial court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Ford v. Ford*, 347 Ark. 485, 65 S.W.3d 432 (2002). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* We give due deference to the trial judge's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Id.* Since the question of the preponderance of the evidence turns largely upon the credibility of the witnesses, we defer to the superior position of the trial judge to evaluate the witnesses, their testimony, and the child's best interest. *Word v. Remick*, 75 Ark.App. 390, 58 S.W.3d 422 (2001). Because there are no cases in which the superior position, ability, and opportunity of the trial judge to observe the parties carry as much weight as in those involving child custody, our deference to the trial judge is correspondingly greater in such cases. *Id.* The best interest of the child is of paramount importance in deciding the question of custody; all other considerations are secondary. *Ford, supra.*

■ In reviewing equity cases de novo, we affirm a correct decision of the trial court if we conclude the record shows an appropriate reason for affirmance, even though the reason was not stated by the trial court as a basis for its decision. *See Sossamon v. Davis*, 271 Ark. 156, 607 S.W.2d 405 (1980). The record in this case provides evidence sufficient to support a finding of a material change in circumstances. Shauna admitted at the hearing that she had accused Matthew of sexual deviance, burglary, and killing the children's dog—all without any evidence. Testimony at the hearing further established that Shauna made disparaging remarks about Matthew and his family in front of the children, in public, and to people at the children's school. Shauna admitted making unproven accusations of sexual deviance by Matthew and Cammy, and the parties' ten-year-old child asked Cammy age-inappropriate questions about sex, including whether Cammy and her two-year-old child had sexually transmitted infections.

In *Sharp v. Keeler*, we held that the mother's continued efforts to alienate the father from the child constituted a material change in circumstances. 99 Ark.App. 42, 55, 256 S.W.3d 528, 537 (2007). The record in this case supports the conclusion that Shauna engaged in behavior designed to alienate the children from Matthew. On the basis of Shauna's behavior both before and during the hearing, as evidenced by the testimony in the record, we hold that the trial court did not err by finding that Matthew proved a material change in circumstances and that an award of custody to Matthew was in the children's best interest. We affirm the circuit court's order on this point.

■ Shauna's final argument is that the trial court erred by modifying Matthew's child support obligation retroactive to April 2011. Matthew concedes in his brief that this was error. Child-support orders cannot be retroactively modified for the time period before the filing of the petition for modification, and it is an abuse of the chancery court's discretion to do so. *Yell v. Yell*, 56 Ark.App. 176, 939 S.W.2d 860 (1997). The order of the circuit court is reversed and remanded on this point for entry of an order consistent with the law regarding modifications of child-support orders.

Affirmed in part; reversed and remanded in part.

HARRISON, VAUGHT, WOOD, and BROWN, JJ., agree.

HIXON, J., dissents in part; concurs in part.

KENNETH S. HIXON, Judge, dissenting in part and concurring in part.

I concur with the majority's conclusion that the trial court did not abuse its discretion in denying Shauna's motion for a continuance, and I also concur that we must reverse and remand for entry of an order consistent with the law regarding modifications of child-support orders. However, I dissent from the majority's decision to affirm the change of custody from Shauna to Matthew. I would reverse the custody change because the trial court clearly erred in finding that Matthew proved a material change in circumstances.

In awarding a change of custody to Matthew only seven months after awarding primary physical custody to Shauna, the trial court made four specific findings in support of its conclusion that Matthew had proved a material change in circumstances. The trial court did not leave the appellate court guessing on the grounds that constituted the changed circumstances. Those specific findings were:

(1) Shauna has placed the children in a private religious school not accredited with the state;

(2) the children are attending a strict Pentecostal church, which the parties agreed during the marriage that they would not attend;

(3) the children are no longer involved with extracurricular activities; and

(4) the children's demeanor has changed negatively.

The trial court's first finding regarding the enrollment at a private religious school was not a change in circumstances at all. At the time of the divorce, the children were already enrolled in the private school. Therefore, any reliance on that finding was clear error.

In my view, the combination of the three remaining findings does not constitute a material change in circumstances. The majority ignores the specific findings by the trial court and instead focuses on Shauna's disparaging remarks about Matthew and his family to justify a material change of circumstances.

A short summary of the chronology below is helpful. This was a highly contested divorce and child-custody case, which resulted in the court awarding joint custody to both parents with primary physical custody to Shauna, with Matthew receiving visitation and being ordered to pay child support. Before the divorce decree was even entered, Matthew filed a motion to reduce child support because he lost his job. Matthew remarried a few months later, and his new wife has two daughters from a previous marriage who live with them. Each party subsequently filed competing motions for contempt and modifications.

There was testimony in the record that Shauna made disparaging false allegations against Matthew and his new wife in the presence of the children and that her purpose was to alienate the children from their father. However, Shauna disputed that testimony, stating that she does not make disparaging remarks in front of the children, that she encourages a relationship between the children and their father, and that the children should love both parents and hopefully that they do. Shauna admitted she had made disparaging remarks to third parties about Matthew. There can be no doubt that Shauna was attempting to rear the children in a stricter household than that of Matthew. Shauna admitted she was taking the children to a stricter Pentacostal church than she and Matthew had attended during their marriage and that she did not allow her daughter to wear makeup, fingernail polish, or revealing clothing. It was undisputed that when the children were visiting with Matthew and his new wife, the parties' daughter was allowed to wear makeup, fingernail polish, and less conservative clothing. Hence, there was a philosophical and practical parenting difference between the parties.

The trial court expressed no opinion as to the credibility of the parties on the issue of whether Shauna was alienating the children from Matthew, nor did it make any findings that any of the allegations against Shauna were proven or relevant. The divorce decree contained a provision that neither party would make disparaging remarks about the other party in front of the children. While I do not condone the statements attributed to Shauna, and the evidence of parental alienation, if believed, might rise to the level of the issuance of a citation for contempt against Shauna, it does not rise to the level of a material change in circumstances to justify a custody change. I find *Carter v. Carter*, 19 Ark.App. 242, 719 S.W.2d 704 (1986), to be instructive. In *Carter*, we held that contempt powers should be used prior to the more drastic measure of changing custody, which is in keeping with the principle that custody is not to be changed merely to punish or reward a parent. Moreover, the trial court did not discuss the evidence of parental alienation in its specific findings that it considered to be the material changes.

I am mindful that if the trial court fails to make findings of fact on material change of circumstances, we are permitted on de novo review to conclude that there was evidence from which the trial court could have found such changed circumstances. *See, e.g., Word v. Remick*, 75 Ark.App. 390, 58 S.W.3d 422 (2001). Moreover, where the record is silent we will engage in the longstanding presumption that the trial court made the findings necessary to support its order. *Ingram v. Century 21 Caldwell Realty*, 52 Ark.App. 101, 915 S.W.2d 308 (1996). However, in this case the trial court *did* make specific findings on changed circumstances, but it did not make any findings or pass on the credibility of the competing evidence regarding Shauna's alleged attempts to

alienate the children. Under such circumstances, I think it is improper to go beyond the specific findings of the trial court and engage in credibility and factual determinations, which are functions entirely vested in the trial court.

Here, the trial court stated that it was changing custody of the children because Shauna was taking the children to a stricter Pentacostal church, the children were not allowed to participate in extracurricular activities, and the children's demeanor had changed since the trial  |₁₂only seven months earlier. In my opinion, this is not a material change in circumstances. Because the trial court did not make a finding of parental alienation on the disputed evidence, and the express findings made by the trial court did not amount to a material change in circumstances, I would reverse its decision to change custody from Shauna to Matthew. I respectfully dissent from the portion of the majority's opinion that holds otherwise.